# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30097
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2016

Lyle W. Cayce
Clerk

FRANCES R. SMITH,

Plaintiff - Appellant

v.

BOARD OF SUPERVISORS OF SOUTHERN UNIVERSITY AND
AGRICULTURAL AND MECHANICAL COLLEGE,

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:14-CV-572

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:*

Plaintiff Frances R. Smith appeals the district court's grant of summary judgment in favor of defendant Board of Supervisors of Southern University and Agricultural and Mechanical College (the "Board") on her claims for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30097

## I. Background

Smith began working for the Southern University System ("Southern") in or around 1975, serving the university in various capacities; by 2007, she was serving as Special Assistant and Counsel to the President. After advising then-President Dr. Ralph Slaughter how to handle allegations of sexual harassment by members of the Board, Smith was subpoenaed by Slaughter in a lawsuit he filed against the university which was ultimately settled.

After Slaughter's termination in June of 2009, Smith was also terminated a few months later (some two years after her testimony) as part of a reorganization plan that was structured and implemented by the interim president, Kassie Freeman. At the time her employment was terminated, Smith was 64 years old. The stated aim of the reorganization plan, according to Freeman and the Board, was to reduce a one-million-dollar budget deficit for the 2009–2010 fiscal year. Freeman subsequently hired attorney Tracie Woods to replace Smith. Woods would serve in a dual role as both legal counsel to Southern and professor at Southern's law school. Woods was hired at the same salary previously received by Smith, but approximately $70,000 of her salary would be paid from the law school's budget, saving that money from Southern's operating budget. Woods was 47 years old at the time.

Smith filed an EEOC complaint against the Board, which resulted in a determination in her favor, but it did not result in a settlement. Smith subsequently filed suit in state court alleging age discrimination in violation of the ADEA and retaliation under Title VII. The Board removed the suit to federal district court, which granted the Board's motion for summary judgment on both claims. Smith timely appealed the district court's judgment.

## II. Standard of Review

"We review a grant of summary judgment de novo, applying the same standard as the district court." *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389

2

No. 16-30097

(5th Cir. 2013). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if it may "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, we must resolve all doubts and draw all inferences in favor of the nonmoving party. *Ion*, 731 F.3d at 389. To defeat a motion for summary judgment, "[t]he non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

### III. Discussion

#### A. *Title VII Retaliation*

Smith argues that the district court erred in dismissing her Title VII retaliation claim. Title VII prohibits an employer from discriminating against an employee because she "'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). Title VII retaliation claims based on circumstantial evidence are analyzed under the *McDonnell Douglas*[1] burden-shifting framework.[2] *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996). Under this framework, the plaintiff

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[2] Smith characterizes her retaliation claim as one based on direct evidence, but she has not cited to any admissible direct evidence of retaliation in her brief. Accordingly, to prevail on her claim, Smith must rely on circumstantial evidence to support her retaliation claim, and we therefore analyze her claim under the *McDonnell Douglas* framework. *See Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) ("Usually, in the context of a retaliation claim, the employer refrains from expressly stating that an impermissible criterion influenced his decision . . . and so direct evidence . . . is rarely available. As a result, we have long recognized the well-trod path by which a plaintiff may demonstrate retaliatory intent through the use of circumstantial evidence and the famed *McDonnell Douglas* burden-shifting framework.").

has the initial burden of establishing a prima facie case of retaliation by showing "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Id.* at 304. If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to introduce evidence of a legitimate, nonretaliatory reason for the adverse employment action. *Id.* at 304–05. If the employer meets its burden, the "plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real . . . retaliatory purpose."[3] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

We assume *arguendo* that Smith has stated a prima facie case for retaliation.[4] The burden thus shifts to the Board to introduce evidence of a legitimate, nonretaliatory reason for Smith's termination. The Board proffered

---

[3] Smith brings this claim under a cat's paw theory of liability. A plaintiff may use a cat's paw theory when they "cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus." *See Zamora v. City of Houston,* 798 F.3d 326, 331 (5th Cir. 2015). Under this theory, Smith must show that the person with a retaliatory animus, in this case the Board, influenced the decisionmaker, Freeman, to take the retaliatory action. *Id.*

[4] There is some disagreement among the circuits regarding whether the Supreme Court's holding in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2528 (2013), requires a plaintiff to show but-for causation as part of her prima facie case of retaliation, or only at the third step of the *McDonnell Douglas* framework to rebut an employer's legitimate stated reason for the adverse employment action. *See Young v. City of Phila. Police Dep't*, ___ F. App'x ___, 2016 WL 3101283, at *5 & n.12 (3d Cir. June 3, 2016) (noting a circuit split and reasoning that "[a]pplying the 'but-for' standard at the prima facie stage would effectively eliminate the need to use the *McDonnell Douglas* burden shifting framework because plaintiffs who can prove 'but-for' causation at the prima facie stage would essentially 'be able to satisfy their ultimate burden of persuasion without proceeding through the pretext analysis'" (citations omitted)); *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250–51 (4th Cir. 2015) (noting that a circuit split exists regarding whether *Nassar* applies to the causation prong of the prima facie case of retaliation). We need not resolve this question today, because even applying the standard most favorable to Smith, which only requires a showing of but-for causation at step three of the *McDonnell Douglas* framework, Smith fails to meet her burden.

evidence that budget constraints required Freeman to implement a reorganization plan that resulted in the termination of Smith as well as at least sixteen other employees, many of whom had no involvement in Slaughter's litigation against Southern. As part of the reorganization, Freeman hired Woods as Smith's replacement, saving the university $70,000 from the operating budget. The Board also introduced evidence that Woods was arguably more qualified for the position than Smith.[5] Thus, the Board met its burden of production to articulate a legitimate, nonretaliatory reason for Smith's termination.

Once the Board produces a legitimate, nonretaliatory reason for terminating Smith, the burden shifts back to Smith to raise a material fact issue showing that the Board's proffered reason is in fact a pretext for the real retaliatory purpose. *McCoy*, 492 F.3d at 557. "Showing pretext requires a plaintiff to produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination . . . [,] [and] the plaintiff must show that the protected activity was the 'but for' cause of the retaliation." *Willis v. Cleco Corp.*, 749 F.3d 314, 318 (5th Cir. 2014) (citations omitted); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013) (holding that a Title VII retaliation claim requires that a plaintiff show that "her protected activity was a but-for cause of the alleged adverse action by the employer").

Smith has failed to meet her summary judgment burden. In support of her claim that Freeman terminated Smith as retaliation for her testimony during the Slaughter litigation, Smith offers evidence that consists largely of

---

[5] In support of this claim, the Board produced evidence that Woods has an MBA, served as General Counsel and provided legal advice to companies and government units before becoming a law professor, practiced as an independent attorney, and had experience in a university setting as legal counsel.

speculation and conclusory statements. Even assuming that Smith's evidence does suggest a retaliatory motive on the part of a few of the Board's fifteen or sixteen members, Smith has not produced evidence to show that those members influenced Freeman in deciding to terminate Smith as part of the reorganization plan. *See Zamora v. City of Houston,* 798 F.3d 326, 331 (5th Cir. 2015).

Smith also points to her own affidavit and deposition as evidence, but her statements are largely conclusory or subjective beliefs.[6] Subjective beliefs, no matter how sincere, simply cannot support a finding that Smith's testimony during the Slaughter litigation was a but-for cause of her termination. *See, e.g., Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995); *Waggoner v. City of Garland*, 987 F.2d 1160, 1164 (5th Cir. 1993).

For the reasons discussed above, we conclude that Smith has not met her burden to show that a genuine issue of material facts exists as to whether the Board's proffered legitimate reason was a pretext for retaliation and that Smith's testimony in Slaughter's litigation was the but-for cause of her termination. Accordingly, we affirm the district court's judgment dismissing Smith's Title VII retaliation claim.

*B. Age Discrimination Under the ADEA*

Smith next asserts that the district court erred in dismissing her claim of age discrimination under the ADEA. Claims for age discrimination under the ADEA are also evaluated under the *McDonnell Douglas* framework. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005).

---

[6] For example, Smith relies on the following statement in her deposition to rebut the Board's reasons for her termination: "Dr. Freeman . . . tended to surround herself with young, inexperienced people. *And seemingly, to me,* sought to just be surrounded by younger people. *I thought* it was primarily because of the inexperience that they would do what she kind of told them to do." (emphasis added).

Under the facts of this case, a similar analysis yields a similar result. Because the parties do not dispute that Smith has made a prima facie case of age discrimination, we move to the next step in the *McDonnell Douglas* framework: the burden shifts to the Board to articulate a legitimate, nondiscriminatory reason for Smith's termination. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015). As discussed above, the Board proffered evidence that budget constraints required Smith's termination, and that Woods was more qualified for the position than Smith. For the same reasons discussed above, we conclude that Smith has failed to meet her burden to show that there is a genuine issue of material fact as to whether the Board's stated reasons are pretextual. Smith's subjective beliefs that Freeman terminated her because Freeman preferred to hire younger employees are unsupported by any competent evidence, and she has failed to proffer evidence that would permit a reasonable jury to conclude that the Board's stated reasons are pretextual. Accordingly, we affirm the district court's dismissal of Smith's age discrimination claims under the ADEA.