# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———

No. 16-20135

———

United States Court of Appeals
Fifth Circuit

**FILED**

December 21, 2016

Lyle W. Cayce
Clerk

WILLIAM B. HERNANDEZ,

      Plaintiff - Appellant

v.

METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY,

      Defendant - Appellee

———

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-2763

———

Before ELROD, SOUTHWICK, and GRAVES, Circuit Judges.

PER CURIAM:*

William Hernandez, a police officer with the Metropolitan Transit Authority of Harris County ("METRO"), appeals from a summary judgment that rejected his Title VII discrimination and retaliation claims against his employer.  We AFFIRM.

———

   * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20135

## FACTUAL AND PROCEDURAL BACKGROUND

Officer William Hernandez, a Hispanic-American, has served as a police officer for METRO for the past twenty years. In 2009 and 2010, Officer Hernandez applied and was passed over for promotion to the ranks of Sergeant and Lieutenant. In February 2011, Officer Hernandez filed a lawsuit under Title VII alleging METRO had discriminated against him by failing to promote him on the basis of his age, race, and national origin. On January 22, 2013, a federal jury found METRO liable for retaliation due to the department's elimination of a position for which Officer Hernandez applied and awarded him compensatory and punitive damages.

While his 2011 lawsuit against METRO was pending, Officer Hernandez sought promotions to the rank of Sergeant (April 2012), Lieutenant (April 2012), and Captain (February 2012), which are the positions at the center of this appeal.[1] Since at least 2011, each advancement within METRO's hierarchy requires a candidate to have progressive experience and a minimum period of supervisory experience.

METRO used two contractors to administer the promotion process. First, METRO requested the Bill Blackwood Law Enforcement Management Institute of Texas ("LEMIT") provide a positional analysis of the relevant duties and responsibilities for the ranks of Sergeant and Lieutenant. Thereafter, LEMIT produced a job description and identified behavioral competencies commensurate with the duties and responsibilities of each position. Second, METRO tasked VME Testing Training and Consulting to conduct the testing and provide METRO's Chief, Victor Rodriguez, with a scoring matrix of all viable candidates.

---

[1] Officer Hernandez failed to exhaust his administrative remedies with the EEOC for all of his non-promotion claims from 2009 through 2011, so those claims are barred. *See* 42 U.S.C. § 2000e–5(e)(1); *Price v. Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006).

No. 16-20135

The first stage of METRO's promotional testing process consisted of a written examination, weighted 40%. The second stage of the process, which provided the remaining 60% of the evaluation, was called the Assessment Center. It consisted of another written exercise and two job-skill simulations. Candidates submitted all their completed work products for the Assessment-Center portion under a randomly drawn candidate number. Each stage of testing required candidates to score a minimum of 70 points to qualify for promotion. On the written test, Officer Hernandez scored a 94. For the three components of the Assessment Center, Officer Hernandez received a consolidated score of 61.13. Therefore, Officer Hernandez was not included in the final rankings for possible promotion.

Upon completion of the testing process, VME provided the overall scores and rankings to Chief Rodriguez. Chief Rodriguez then promoted the highest ranked individuals: (1) seven to the rank of Sergeant; (2) six to the rank of Lieutenant; and (3) two to the rank of Captain. At some point after the promotion lists were released, Officer Hernandez sent Chief Rodriguez a letter alleging mathematical errors in his calculated score for one of the Assessment Center practical exercises. Although METRO never formally adjusted Officer Hernandez's final Assessment-Center score to reflect these errors, there is no dispute that a correction would have given a score of only 67.41, leaving Officer Hernandez still below the 70-point threshold.

Officer Hernandez then brought this suit against METRO. He alleged, among other things, that METRO denied him promotional opportunities based upon his race and that the department retaliated against him for his 2011 lawsuit. METRO moved for summary judgment, arguing Officer Hernandez did not have an actionable claim for discrimination or retaliation under Title VII. At a motion hearing on January 28, 2016, the district court granted METRO's motion in full.

No. 16-20135

The district court first determined that Officer Hernandez had not exhausted his administrative remedies regarding his non-promotion to Captain in February 2012.  Based on the undisputed record evidence, the court also held Officer Hernandez failed to establish his prima facie case for his non-promotion to Lieutenant and Captain because he was unqualified for both positions.  The district court also held that Officer Hernandez failed to establish an additional element of his prima facie case because individuals within his protected class were promoted.

Additionally, the district court determined that METRO had a legitimate, nondiscriminatory reason for not promoting Officer Hernandez to Sergeant because his overall ranking (twelfth) fell outside that of the top seven candidates.  Although the district court found the presence of a causal link, the court determined it was insufficient to sustain Officer Hernandez's retaliation claim when viewed in context.  This appeal timely followed.

## DISCUSSION

We review a "district court's grant of summary judgment *de novo*, applying the same standards as the district court." *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009) (citation omitted).  Summary judgment is appropriate when the movant shows there are no genuine issues of material fact and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists when the "evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

All evidence and factual inferences are viewed "in the light most favorable to the [nonmovant] and all reasonable doubts about the facts are resolved in favor of the [nonmovant]." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (citation omitted).  Though we draw all reasonable

4

inferences in favor of the nonmovant, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).  Instead, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

"We may affirm summary judgment on any legal ground raised below, even if it was not the basis for the district court's decision." *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003) (citation omitted).

## I.     *Title VII discrimination claim*

We first examine Officer Hernandez's contention that the district court erred in granting summary judgment on his Title VII discrimination claim.

A Title VII discrimination claim based on circumstantial evidence is analyzed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  To survive summary judgment, a plaintiff must first present a prima facie case of discrimination. *Thomas v. Johnson*, 788 F.3d 177, 179 (5th Cir. 2015).  Once a plaintiff establishes a prima facie case, a presumption of discrimination is established. *Id.*  A burden of production then is placed on the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quotation marks omitted).  If the employer meets this burden, the presumption of discrimination

disappears and the burden shifts back to the plaintiff to establish that the employer's proffered reason is pretextual. *Id.*

At the outset, Officer Hernandez must establish his prima facie case of discrimination by demonstrating that:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015) (citation omitted).

The first and third elements are not in dispute: Officer Hernandez is Hispanic-American, and he was passed over for promotion. Officer Hernandez must still show that he was qualified for the promotions[2] he sought (the second element) and treated less favorably than similarly situated employees who were not members of his protected group (the fourth element).

We first consider Officer Hernandez's non-promotion to Lieutenant. The undisputed record evidence supports the district court's conclusion that he was not qualified for the position because he lacked the requisite supervisory experience at the rank of Sergeant within the two years immediately preceding his application for promotion. Notably, Officer Hernandez concedes that he failed to meet the objective criteria METRO set forth to judge its employees' qualifications for promotion.[3] *See Burdine*, 450 U.S. at 259 ("[T]he employer

---

[2] As an initial matter, Officer Hernandez does not dispute that he failed to exhaust his administrative remedies regarding the promotion to Captain. Accordingly, he has abandoned this issue on appeal. *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal.").

[3] Instead, Officer Hernandez argues METRO's revamping of the promotional requirements impermissibly favored African-American candidates over Hispanic candidates. This argument is belied by the record as the supervisory experience requirement was

No. 16-20135

has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria.").

Finally, we consider Officer Hernandez's being denied a promotion to Sergeant. On this challenge, we do not decide if Officer Hernandez established his prima facie case. The more certain conclusion is that METRO had a legitimate, nondiscriminatory reason for not promoting him. We explain.

We start with the question of Officer Hernandez's score calculation for the Assessment Center portion of the testing. It is conceded that his initial score was erroneous, but he still did not meet the 70-point threshold for promotion eligibility upon a scoring revision nor was he one of the top seven candidates for promotion to Sergeant. Further, the record does not support Officer Hernandez's assertion that he deserved the addition of three educational points to his revised 67.41 score, which would have pushed him across the 70-point threshold. Instead, those additional points are relevant if an applicant has reached the minimum score of 70.[4]

Beyond the question of his score, Officer Hernandez had the burden of producing sufficient evidence from which a reasonable trier of fact could conclude that METRO's explanation for not promoting him was pretextual. An employee's showing that he was "clearly better qualified is enough to prove that [his] employer's proffered reasons are pretextual." *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002) (citations omitted). In contrast to the minimal burden that a plaintiff bears when establishing his prima facie case,

---

published and in effect approximately seven months before Officer Hernandez applied for promotion to Lieutenant. The district court did not err on this issue.

[4] The VME Testing Training and Consulting Booklet clearly sets forth a rule that "[c]andidates who successfully complete each phase of the promotional process with a score of 70 or higher will be awarded additional points to the final score for the highest education level attained." Because Officer Hernandez did not meet the minimum threshold of 70, he did not qualify for the additional education points.

7

a plaintiff must produce "substantial evidence of pretext." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001). "Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions." *LeMaire v. La. Dep't. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007).

Officer Hernandez claims that METRO's actions in this case are reflective of the type of inconsistencies that we have held to be pretextual in similar circumstances. Specifically, he asserts that METRO's response when African-American police officers complained of the testing process is inconsistent when compared to its response to Officer Hernandez's complaint to Chief Rodriguez about his test scores. Yet, Officer Hernandez has not adduced any evidence that METRO's varied responses were the result of the agency's failure to follow its own internal policies. In fact, METRO's decision to overhaul its promotion system based on systematic concerns versus an individual's complaints about scoring errors is not the sort of "unexplained inconsistency" from which a jury could infer pretext.[5] *Burrell v. Dr. Pepper/Seven Up Bottling Grp.,* 482 F.3d 408, 415 (5th Cir. 2007).

Officer Hernandez has also failed to offer evidence that would permit a reasonable jury to conclude that METRO's stated reasons are "false or unworthy of credence, and thus pretextual." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015) (quotation marks and citation omitted). Other than speculation and his own subjective belief that METRO's decision was discriminatory, Officer Hernandez does not point to any summary judgment evidence, let alone "substantial evidence," that race had

---

[5] Courts regularly "decline[] to serve as a super-personnel department that reexamines an entity's business decisions." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006) (citation and quotation marks omitted); *see also Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). We agree with our sister circuits on this approach.

anything to do with him being passed over for promotion to Sergeant. *See Auguster*, 249 F.3d at 403.

In sum, because Officer Hernandez has not put forth evidence that METRO's legitimate, nondiscriminatory reasons for not promoting him were pretextual, the district court properly granted summary judgment in METRO's favor.

## II.    *Title VII retaliation claim*

Officer Hernandez also appeals the district court's dismissal of his retaliation claim. To establish a prima facie case of retaliation, a plaintiff must show that: "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556–57. "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened [motivating factor] causation test[.]"[6] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). This heightened standard "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* We also employ the *McDonnell Douglas* burden-shifting framework to analyze Title VII retaliation claims. *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996).

Because our review of the district court's decision is *de novo*, we need not decide if the lower court was correct in its determination that Officer

---

[6] We recently noted the existence of a circuit split "regarding whether the Supreme Court's holding in [*Nassar*] requires a plaintiff to show but-for causation as part of [his] prima facie case of retaliation, or only at the third step of the *McDonnell Douglas* framework. . . ." *Smith v. Bd. of Supervisors of S. Univ.,* No. 16-30097, 2016 WL 4254380, at *2 n.4 (5th Cir. Aug. 11, 2016). As in *Smith*, we need not resolve this issue because Officer Hernandez fails to meet his burden even under the most favorable standard.

Hernandez failed to establish his prima facie case of retaliation. Instead, we begin with an analysis of whether METRO met its burden to introduce evidence of a legitimate, nonretaliatory reason for Officer Hernandez's non-promotion. As with Officer Hernandez's claim for discrimination, METRO offers that it did not promote him to the rank of Sergeant because he did not meet the 70-point threshold and because Officer Hernandez was not one of the top seven eligible candidates. Once METRO produces a legitimate, nonretaliatory reason for failing to promote Officer Hernandez, the burden shifts back to Officer Hernandez to raise an issue of material fact showing that METRO's offered reason is in fact pretext for the real retaliatory purpose. *Outley v. Luke & Assocs.,* 840 F.3d 212, 219 (5th Cir. 2016). Officer Hernandez must demonstrate that his non-promotion "would not have occurred but for [METRO's] retaliatory motive." *Id.* (quotation marks omitted).

Officer Hernandez has also failed to meet his summary judgment burden on his Title VII retaliation claim. In response to METRO's legitimate, nonretaliatory reason, Hernandez appears to rely on the temporal proximity between his 2011 lawsuit against METRO and his 2012 non-promotion to Sergeant to establish causation. We have held that "temporal proximity between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage."[7] *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948 (5th Cir. 2015). However, the burden has now shifted to a heightened standard of "but-for" causation, for

---

[7] "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Here, a period of twelve months passed between Officer Hernandez's first Title VII action and 2012 applications for promotion to Lieutenant and Sergeant, such that the temporal proximity between Officer Hernandez's protected activity and his adverse employment action is insufficient to support an inference of causality.

which temporal proximity, without more, will not suffice. *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

Although Officer Hernandez did present evidence of a 2011 lawsuit, which the district court considered protected Title VII activity, he failed to demonstrate any connection, let alone the requisite but-for causation, between his protected activity in 2011 and his non-promotion in 2012. *See Nassar*, 133 S. Ct. at 2533. The fact that Officer Hernandez was not promoted based on his low overall ranking, which he achieved during an external vendor's anonymous testing process, directly undermines his argument that his protected activities were a but-for cause of his adverse employment action. At most, Officer Hernandez offers his subjective belief of retaliation, which we have repeatedly held is insufficient to warrant relief. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008) (citations omitted).

For the reasons discussed above, we conclude that Officer Hernandez has not met his burden to show that a genuine issue of material fact exists as to whether METRO's offered legitimate reason was a pretext for retaliation.

AFFIRMED.